```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------  X
UNITED STATES OF AMERICA,                                  :
                                                           :   MEMORANDUM DECISION AND
                                      Plaintiff,           :   ORDER
                                                           :
             - against -                                   :   21-cr-571 (BMC)
                                                           :
PERCELL ROSS,                                              :
                                                           :
                                      Defendant.           :
---------------------------------------------------------  X
```

**COGAN**, District Judge.

Defendant Percell Ross pleaded guilty to possession of a firearm after a prior felony conviction in violation of federal law. He moves to withdraw his plea of guilty under Fed. R. Crim. P. 11(d)(2)(B), arguing that it was involuntary due to ineffective assistance of counsel. Specifically, Ross contends that his former counsel failed to assert that officers lacked reasonable suspicion to stop him under New York State procedural law, failed to raise an objection to a report and recommendation finding that officers had reasonable suspicion to arrest him based on out-of-state warrants, and incorrectly advised him that a state court promised to sentence him concurrently with his federal court sentence. For the reasons set forth below, Ross's motion is denied.

## BACKGROUND

In October 2021, an arrest team consisting of police officers and the Federal Bureau of Investigation were tasked with locating and arresting Ross in connection with a homicide that had taken place a few days before. Officers, including Det. Matthew Velasco, identified Ross and his vehicle through video surveillance footage from before and after the homicide. Additionally, officers wished to locate Ross because he had outstanding arrest warrants from Connecticut and Virginia. Det. Adrian, who had knowledge of these warrants, informed Det.

Velasco about them. Det. Velasco did not personally review the warrants or the National Crime Information Center ("NCIC") database report that listed the out-of-state warrants prior to Ross's arrest.

Officers eventually located Ross in Brooklyn, New York. Surveillance footage, which Det. Velasco reviewed, showed the same vehicle found at the homicide, and Ross entering a building there shortly after the homicide. Officers, including Velasco, approached Ross, calling out "police, stop." Rather than stopping, Ross began to run. As he ran, Ross turned around and began shooting a firearm at the officers. After exchanging fire, Ross eventually fell to the ground and officers placed him under arrest.

Ross was charged, and a grand jury indicted him with possession of a firearm after a prior felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Around the same time, Ross was charged for the homicide in state criminal court in Westchester County, New York.

In April 2022, Ross filed a motion in federal court to suppress the firearm he used to shoot at police officers. This Court referred the motion to Magistrate Judge Lois Bloom. Following an evidentiary hearing, Judge Bloom entered a report and recommendation ("R&R"), recommending that the Court deny the motion to suppress. Although former counsel argued that the surveillance footage was insufficient to establish reasonable suspicion to arrest Ross, and that officers could not arrest him based on out-of-state warrants, Magistrate Judge Bloom found these arguments unconvincing.

First, Magistrate Judge Bloom found that officers had reasonable suspicion to stop Ross, because the surveillance footage sufficiently linked him and his vehicle to the homicide. Second, Magistrate Judge Bloom found that officers had other grounds for reasonable suspicion, because under the collective knowledge doctrine, even though Det. Velasco did not have personal

knowledge of the NCIC report, Det. Adrian, who informed Velasco about the warrants, did, and because a NCIC report containing an arrest warrant can establish probable cause for an arrest, Det. Velasco had at least reasonable suspicion to stop Ross. Finally, Magistrate Judge Bloom found that officers had independent probable cause to arrest Ross, because when officers ordered him to stop, he started to run and shoot at them, and whether or not the initial stop was constitutional, Ross's subsequent unlawful conduct – shooting at officers – gave officers probable cause. Ross's counsel raised several objections to the R&R, but did not specifically object to the R&R's finding that the out-of-state warrants gave officers reasonable suspicion. This Court adopted the R&R in its entirety and denied the motion to suppress.

Ross then pleaded guilty in the state case. The state court promised him that it would impose a sentence of 20 years to life. It indicated that it would sentence Ross concurrently with his upcoming sentence in this federal case if it were to sentence him last – in other words, it agreed to sentence him concurrently, but could not speak as to how this Court would sentence him.

In April 2024, Ross pleaded guilty before Magistrate Judge Bloom in the instant federal case. Magistrate Judge Bloom advised Ross that the Government had agreed not to oppose his request for a concurrent sentence if the state court sentence was at least 240 months, but if the state court sentenced him to less than 240 months, there would be no promise that it would recommend a concurrent sentence. When asked if he understood this, Ross answered that he did:

> THE COURT: Well, the most important thing that I need Mr. Ross to understand is we have no control over what the state court does. . . . The language of this agreement says that the Government will not oppose your request for imposition of a sentence to run concurrently to the sentence imposed in the state court. But if the sentence imposed in that case is less than 240 months, there's no promise from this Court that it will agree to run concurrently that sentence. Do you understand that?

>THE DEFENDANT: Yeah.
>
>THE COURT: So the sentence that is imposed in state court has to be a minimum of 240 months imprisonment or greater. And if it is, then the Government will not oppose your request for imposition of a sentence to run concurrently to that sentence. Do you understand that?
>
>THE DEFENDANT: Yes.
>
>THE COURT: But if the state court imposes a consecutive sentence of imprisonment in whole or in part, you will not have the right to withdraw your guilty plea here. . . . Do you understand that?
>
>THE DEFENDANT: Yes.

Magistrate Judge Bloom then asked Ross whether his written plea agreement accurately reflected his understanding of the agreement he entered into with the Government, and Ross answered that it did. When Magistrate Judge Bloom asked him whether outside of the plea agreement, anyone had made any promises to him causing him to plead guilty, Ross hesitated and spoke with his counsel. After conferring with counsel, Ross answered that no one had made any such promise.

Magistrate Judge Bloom asked counsel to clarify on the record why Ross had hesitated. Former counsel responded that Ross had questions about how his state court sentence would interact with his federal sentence. Magistrate Judge Bloom then asked counsel about the details of his state court sentence. Counsel responded that the state court had promised it would impose a sentence of twenty years to life, but clarified that "[n]o promise was made or could be made by the state judge as to what the federal sentence would be."

>THE COURT: So let me just ask, has Mr. Ross already pled in the state court?
>
>[COUNSEL]: Yes, Your Honor.
>
>THE COURT: And on what date? Because I want the record to be clear that that's the point of difference here.

4

> [COUNSEL]: Just for a moment. Judge, Mr. Ross entered a guilty plea on February 15th, 2024, in the Superior Court of the State of New York. He pled guilty to murder, and the judge there promised him that he would impose a sentence of twenty years to life, and that that Court would render the state sentence concurrent to the federal sentence. *No promise was made or could be made by the state judge as to what the federal sentence would be.* And the state court sentence is an indeterminate term of twenty to life.
>
> THE COURT: But that meets the minimum of what the plea agreement here of 240 months would be.
>
> [COUNSEL]: Yes.

(emphasis added).

In May 2024, this Court accepted Ross's guilty plea. In April 2025, Ross raised for the first time his intention to withdraw his guilty plea. He terminated his attorneys and moved *pro se* for reconsideration of his suppression motion and for reconsideration of his guilty plea. Ross also moved to appoint new counsel, arguing that his attorneys had incorrectly told him that his federal court sentence would run concurrently with his state court sentence, that officers could not arrest him based on the out-of-state warrants, and that they had failed to object to Magistrate Judge Bloom's R&R on this ground.

This Court appointed new counsel. Ross again terminated this attorney and moved to appoint new counsel, arguing that his attorney had made no effort to investigate his claims. The Court then appointed new counsel. Current counsel filed the present motion in November 2025, arguing that Ross's former counsel failed to assert that officers lacked reasonable suspicion to stop him under New York Criminal Procedure Law § 140.50(1), failed to raise an objection to a report and recommendation finding that officers had reasonable suspicion to arrest him based on out-of-state warrants, and incorrectly advised him that the state court promised it would sentence him concurrently with his federal court sentence.

5

**DISCUSSION**

**I. Legal Standard**

A defendant may withdraw a plea of guilty after the court accepts the plea but before it imposes a sentence, if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The defendant 'bears the burden of showing . . . valid grounds for withdrawal.'" United States v. Albarran, 943 F.3d 106, 118 (2d Cir. 2019) (quoting United States v. Rivernider, 828 F.3d 91, 104 (2d Cir. 2016)). "[T]he standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." Id. (quoting United States v. Rose, 891 F.3d 82, 85 (2d Cir. 2018)). "Accordingly, a defendant's 'reevaluation of the government's case against him' does not justify withdrawal of a plea." Id. (quoting United States v. Schmidt, 373 F.3d 100, 103 (2d Cir. 2004)).

**II. Ross Has Not Shown That His Plea Was Involuntary**

"In ruling on a plea withdrawal motion, courts consider whether the defendant 'has raised a significant question about the voluntariness of the original plea.'" Albarran, 943 F.3d at 117 (quoting Schmidt, 373 F.3d at 103). "A showing of ineffective assistance of counsel may 'undermine the voluntary and intelligent nature of a defendant's decision to plead guilty,' thereby entitling the defendant to withdraw his guilty plea." United States v. Thomas, 651 F. Supp. 3d 685, 692 (S.D.N.Y. 2023) (quoting United States v. Robinson, No. 08-cr-976, 2015 WL 8073757, at *5 (S.D.N.Y. Dec. 4, 2015)). Under Strickland v. Washington, 466 U.S. 668 (1984), a "successful claim that counsel rendered ineffective assistance requires an affirmative showing

6

that [(1)] counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms, and [(2)] it is reasonably likely that prejudice occurred – i.e., that but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005) (citing Strickland, 466 U.S. at 687-96); see also United States v. Pichardo, No. 13-cr-172, 2013 WL 6003514, at *6 (S.D.N.Y. Nov. 13, 2013) (applying Strickland's two-part test to defendant's claim that his plea was involuntary due to ineffective assistance of counsel), aff'd, 595 F. App'x 19 (2d Cir. 2014); United States v. Sterritt, 769 F. Supp. 3d 180, 199 (E.D.N.Y. 2025) (same).

First, Ross argues that former counsel never raised the argument that the arresting officers lacked reasonable suspicion to stop him under New York Criminal Procedure Law § 140.50(1), and failed to object to the portion of Magistrate Judge Bloom's R&R that officers lacked any constitutional basis to arrest him based on the out-of-state warrants.

These arguments are unavailing, because as Magistrate Judge Bloom held in her R&R, police officers clearly had reasonable suspicion and probable cause to stop and arrest him both based on *and* independent of the out-of-state warrants. Therefore, former counsel was under no obligation to raise the argument that officers lacked reasonable suspicion under state law, or object to the R&R based on the out-of-state warrants. Moreover, former counsel was correct not to raise the argument that officers lacked reasonable suspicion under New York Criminal Procedure Law § 140.50(1), because whether officers had reasonable suspicion under state procedural law is irrelevant to the Court's determination of whether officers had reasonable suspicion under the Fourth Amendment. See United States v. Bernacet, 724 F.3d 269, 277 (2d Cir. 2013) ("[T]he Fourth Amendment does not incorporate state *procedural* criminal law.").

Next, Ross argues that former counsel incorrectly told him that the state court promised his state court sentence would run concurrently with his federal court sentence. This argument is likewise unavailing. During the plea hearing before Magistrate Judge Bloom, right after former counsel informed the court that the state court "would render the state sentence concurrent to the federal sentence," former counsel clarified this remark by stating that "no promise was made or could be made by the state judge as to what the federal sentence would be." Former counsel clearly communicated to Ross that the state court's promise to sentence him concurrently was subject to this Court's decision on whether or not to sentence him concurrently. Moreover, prior to this statement, Magistrate Judge Bloom informed Ross that the Government had agreed not to oppose his request for a concurrent sentence if the state court sentence was at least 240 months, but if the state court sentenced him to less than 240 months, there would be no promise that the Government would recommend a concurrent sentence. When asked if he understood this, Ross answered that he did.

In light of these facts showing that Ross understood that the state court would sentence him concurrently subject to the federal court's final decision and only if his state court sentence was at least 240 months, Ross has not met the stringent burden of showing that his plea was involuntary based on ineffective assistance of counsel.

**III. Ross Has Not Shown a Fair and Just Reason For Withdrawing His Plea**

Other factors a court may consider in determining whether withdrawal would be fair and just include "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." Albarran, 943 F.3d at 117-18 (quoting Schmidt, 373 F.3d at 102-103).

In addition to Ross's failure to show that his plea of guilty was involuntary, these factors weigh against granting his motion. First, Ross has not asserted a claim of legal innocence. Second, around nineteen months have passed between his plea and this motion, and even considering Ross's frequent changes of counsel – all at his request – almost one year passed between Ross's plea and when Ross first indicated an intention to withdraw his guilty plea. See Thomas, 651 F. Supp. 3d at 693 ("Courts in this Circuit have held that delays of periods of time much shorter than [four months] weigh against motions to withdraw.") (collecting cases). Third, because Ross has not shown sufficient grounds for justifying withdrawal of his plea, the government need not demonstrate prejudice. See United States v. Saft, 558 F.2d 1073, 1083 (2d Cir. 1977).

Accordingly, because Ross has failed to make a showing that his plea was involuntary or that he has a fair and just reason for withdrawing his plea, Ross's motion for reconsideration of his plea of guilty is denied.

## CONCLUSION

For the foregoing reasons, Ross's motion for reconsideration of his plea of guilty is denied. His motion for reconsideration of his suppression motion is also denied as moot.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       December 27, 2025

9